## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **CHAMBERLIN HOUSTON, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | CIVIL ACTION NO. 3:17-CV-00093 |
| | § | |
| | § | |
| **CERTAINTEED CORPORATION** | § | |
| **D/B/A CERTAINTEED SAINT-GOBAIN;** | § | |
| **UNITED STATES GYPSUM COMPANY** | § | |
| **D/B/A USG; AND AMERICAN BUILDERS** | § | |
| **& CONTRACTORS SUPPLY CO., INC.** | § | |
| **D/B/A ABC SUPPLY CO., INC.** | § | |
| | § | |
| **Defendants.** | § | |

### FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

To the Honorable Judge George C. Hanks, Jr.:

Plaintiff Chamberlin Houston, LLC ("Chamberlin"), hereby files this First Amended Petition against Defendants CertainTeed Corporation d/b/a CertainTeed Saint-Gobain; United States Gypsum Company d/b/a USG; and American Builders & Contractors Supply Co., Inc. d/b/a ABC Supply Co., Inc. and states as follows:

### THE PARTIES

1.      Chamberlin is a Texas limited liability company engaged in the business of installing commercial roofing and waterproofing with its principal place of business located at 7510 Langtry, Houston, Texas 77040.

2. CertainTeed Corporation ("CertainTeed"), d/b/a CertainTeed Saint-Gobain, is a corporation organized and existing under the laws of the State of Delaware, with its legally designated corporate office located at 20 Moores Road, Malvern, Pennsylvania, 19355. CertainTeed is a manufacturer and seller of roofing materials and marketer of roofing systems utilizing roofing and insulation materials manufactured and/or sold by CertainTeed. CertainTeed regularly transacts business in Texas, including the marketing and selling of roofing materials. CertainTeed may be served with service of process on its registered agent for service in Texas, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas, 75201-3136.

3. United States Gypsum Company ("USG") is a Delaware limited liability company with its legally designated corporate office located at 550 W. Adams Street, Chicago, Illinois, 60661.USG regularly transacts business in Texas, including the sale of building materials for use in buildings and roofing systems constructed in Texas. USG may be served with service of process on its registered agent for service in Texas, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas, 75201-3136.

4. American Builders & Contractors Supply Co., Inc. ("ABC Supply") is a corporation organized and existing under the laws of the State of Delaware, with its legally designated corporate office located at One ABC Parkway, Beloit, Wisconsin, 53511. ABC Supply is a distributor of and seller of roofing and insulation materials in Texas and across the United States. ABC maintains an office and warehouse at 7710 North Shepherd Drive, Houston, Texas and at other locations in Texas. ABC Supply may be served with service of process on its registered agent for service in Texas, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620, Austin Texas, 78701.

## JURISDICTION AND VENUE

5.     Plaintiff, Chamberlin, originally filed this action as a Texas state court action in the 405th District Court of Galveston County, Texas which was designated as 17-CV-0200 (the "State Court Action").

6.     Pursuant to Defendant CertainTeed's notice of removal, the State Court Action was removed to this Court.

7.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(a) because the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs, and as established in Paragraphs 1-4, above, complete diversity exists among the parties.

8.     Because this Court has subject matter jurisdiction over this action, venue is proper in this Court pursuant to 28 U.S.C. §124(b)(1) and §1441(a) as this Court is the federal judicial district and division encompassing the 405th District Court of Galveston County, Texas.

## BACKGROUND FACTS

9.     On or about July 19, 2013, Chamberlin executed a subcontract with a general contractor, Hensel Phelps Construction Company ("Hensel Phelps"), to serve as the roofing subcontractor on a construction project. More particularly, Chamberlin was retained to install a roof system on the new Jennie Sealy Replacement Hospital (the "JSRH Project") at the University of Texas Medical Branch campus, located at 301 University Boulevard, Galveston, Texas 77555.

10.     The roofing system that Chamberlin was to install at the JSRH Project was comprised of several materials and components including polyisocyanurate roof insulation, gypsum-based roof cover board, a modified bitumen roof membrane and a heat fused cap sheet.

11.     The materials and roof system that Chamberlin was to furnish and install were described in contract documents, including construction specifications and drawings, issued on behalf of the Owner of the JSRH Project and prepared by designers retained by the University of Texas, Office of Facilities Planning and Construction (hereinafter referred to as "Owner").

12.     CertainTeed was provided and was familiar with the design requirements pertaining to the roof at the JSRH Project, including the requirements pertaining to wind uplift resistance.

13.     ABC Supply was provided and was familiar with the design requirements pertaining to the roof at the JSRH Project, including the requirements pertaining to wind uplift resistance.

14.     ABC Supply provided quotations for the materials and roof system directly to Chamberlin.

15.     Chamberlin engaged Canalco, Inc. ("Canalco"), a wholesaler of roofing materials, who purchased the materials and roof system from ABC Supply. Canalco then sold the materials and roof system to Chamberlin.

16.     ABC Supply was aware that the roof materials and roof system purchased by Canalco were to be used by Chamberlin for the JSRH Project.

17.     Per paragraph 1.3K, Testing, Section 07 51 13, Built-Up Asphalt Roofing, of the JSRH Project Specifications, the Owner reserved the right to perform wind uplift testing of the installed roof system per FM 1-52 and/or ASTM E 907.

18.     CertainTeed desired that roofing materials manufactured and sold by CertainTeed be used by Chamberlin at the JSRH Project.

19.     ABC Supply desired that Chamberlin install at the JSRH Project roofing materials sold by ABC Supply.

20.     CertainTeed was aware of the design requirements pertaining to wind-uplift resistance of the roof system at the Project prior to seeking to cause Chamberlin to procure and install roofing materials marketed by CertainTeed in the construction of the roof system at the JSRH Project.

21.     ABC Supply was aware of the design requirements pertaining to wind-uplift resistance of the roof system prior to selling materials which ABC Supply knew Chamberlin would install at the JSRH Project.

22.     CertainTeed sought to and succeeded in causing Chamberlin to install a CertainTeed roof system, utilizing materials manufactured, sold and/or approved by CertainTeed at the JSRH Project.

23.     CertainTeed represented to Chamberlin prior to Chamberlin's installation of the roof at the JSRH Project that CertainTeed was in receipt of documents providing design parameters for the roof cladding at the JSRH Project.

24.     Prior to the purchase of the roof materials and installation of the roof at the JSRH Project, CertainTeed represented to Chamberlin that a roof system marketed by CertainTeed and incorporating products either manufactured, sold or approved by CertainTeed would meet the roof cladding design pressures specified for the JSRH Project.

25.     The roof system (hereinafter referred to as the "CertainTeed Roof System") that was represented by CertainTeed to meet the roof cladding design pressures specified for the JSRH Project included the following roofing materials: CertainTeed Flintboard isocyanurate in-

sulation applied in Dow Insta-Stick ribbons, ½" USG Securock gypsum fiberboard cover board applied in Dow Insta-Stick ribbons, CertainTeed Ultra Poly SMS modified bitumen base ply heat welded and CertainTeed FR Cap 30-T Cool Star modified bitumen cap sheet, torch applied.

26. Based on representations made by CertainTeed and USG, in or about February, 2014, Chamberlin proceeded to procure the roofing materials used in the CertainTeed Roof System, including CertainTeed isocyanurate insulation, Securock cover board, CertainTeed Ultra Poly SMS base sheet and CertainTeed FR Cap 30T Cool Star cap sheet.

27. Chamberlin began installation of the roofing at the JSRH Project in March 2014.

28. The CertainTeed Roof System installed by Chamberlin at the JSRH Project was marketed by CertainTeed and utilized materials manufactured and sold by CertainTeed, materials manufactured by others and sold by CertainTeed, and materials approved by CertainTeed.

29. Upon completion of roof installation in February, 2015, and prior to acceptance of the new roof installed by Chamberlin at the JSRH Project, the project Owner, the University of Texas Medical Branch, through its agents, decided to test the newly installed roof assembly for wind uplift resistance. More specifically, the firm of Zero/Six Consulting, LLC ("Zero/Six Consulting"), was retained on behalf of the Owner to perform uplift testing of the roof at the JSRH Project.

30. On or about February 16, 2015, Zero/Six Consulting performed roof uplift testing at three locations on the JSRH roof. The testing by Zero/Six Consulting was performed in accordance with the ASTM E 907. At all three locations, the roof failed to meet the required uplift pressures. Zero/Six Consulting reported that core cuts revealed cohesive failure of the Securock

gypsum fiber cover board at the first two locations and delamination of the facer of the CertainTeed polyisocyanurate insulation at the third location.

31.     Zero/Six Consulting performed additional uplift tests of the roof on February 19, 2015 and March 16, 2015. Zero/Six Consulting reported that three uplift tests failed on February 19, 2015 and four uplift tests failed on March 16, 2015. Zero/Six Consulting reported that core cuts taken on March 16, 2015 showed cohesive failure of the gypsum fiber cover board. Zero/Six Consulting reported that one of the failed tests on February 19, 2015 indicated delamination of the facer of polyisocyanurate insulation.

32.     Zero/Six Consulting performed four additional uplift tests on April 27, 2015 at perimeters and corners. Zero/Six Consulting reported that all four tests failed to meet the required uplift pressures.

33.     On July 2, 2015, Zero/Six Consulting conducted its final round of testing of the roof system at the JSRH Project. Zero/Consulting reported that it conducted three uplift tests, all three tests failed and there was cohesive failure of the gypsum cover board in the tested areas.

34.     Following the first three rounds of uplift testing, Chamberlin advised CertainTeed's regional personnel that the roof at the JSRH had failed uplift testing and requested that CertainTeed work with Chamberlin to develop and pay for repairs.

35.     On or about April 16, 2015, Chamberlin sent a letter to CertainTeed's President stating that the CertainTeed Roof System did not pass the uplift testing, and that Chamberlin had tried to resolve the problem with CertainTeed regional sales and technical personnel to no avail.

36.     On or about September 17, 2015, Hensel Phelps forwarded a letter to Chamberlin, stating that Chamberlin would be in default of its contract with Hensel Phelps if it did not pro-

ceed immediately with repairs of the roof at the JSRH Project. Hensel Phelps also threatened Chamberlin with liquidated damages for delay in completion of the JSRH Project as a result of the failure of the roof to pass the uplift testing.

37.     To remedy the problem with the roof and avoid further delay to the completion of the JSRH Project, Chamberlin was required to perform extensive remedial roofing work, including removal of the cap sheet, installation of mechanical fasteners through the existing base sheet, gypsum cover boards and polyisocyanurate insulation to attach the roof assembly to the concrete deck, installation of a new cap sheet and performing of other associated work. Chamberlin began its remedial work on or about October 2015, and completed this work on or about January, 2016.

38.     On or about December 4, 2015, CertainTeed took two cores from an area of the roof at the JSPH Project that had been damaged by a storm.

39.     On or about February 8, 2016, CertainTeed sent a letter to Chamberlin regarding its testing of samples. CertainTeed stated that its testing indicated that the samples were manufactured according to the specifications and contained no manufacturing defects. CertainTeed implied that the failure to pass uplift tests was due to the ribbon spacing of Dow Insta-Stik adhesive.

40.     Ribbon spacing of adhesive was not the cause of cohesive failure within the gypsum cover board.

41.     Ribbon spacing of adhesive was not the cause of delamination of factory applied facers to the polyisocyanurate roof insulation board.

42.     After Chamberlin completed the remedial work, Chamberlin sent CertainTeed a letter dated March 9, 2016, whereby Chamberlin renewed its request that CertainTeed take responsibility for the costs to repair the roof at the JSRH Project.

43.     CertainTeed failed or refused to accept responsibility for the repair costs at the JSRH Project.

44.     To date, Chamberlin has not been paid by CertainTeed for the remedial repairs performed by Chamberlin to the roof assembly at the JSRH Project.

45.     Exclusive of attorney's fees, Chamberlin has incurred damages in the amount of $259,622.85 relating to performance of the remedial work at the JSRH Project due to the failure of the CertainTeed Roof System to pass uplift testing.

46.     Pursuant to an executed Assignment of Claims and Causes of Action agreement by and between Chamberlin and Canalco (the "Assignment"), Canalco assigned to Chamberlin, each and all of its claims and/or causes of action arising from or in any way related to the JSRH Project, the materials, the roof system (and the materials furnished thereunder) and/or this civil action. Accordingly, any and all references herein to the "purchase" of materials shall mean Chamberlin purchasing materials from Canalco who purchased same from ABC Supply and/or CertainTeed.

## COUNT I
## BREACH OF EXPRESS WARRANTIES - CERTAINTEED

47.     Chamberlin hereby realleges and incorporates by reference Paragraphs 1 through 46 as though fully set forth herein.

48.     Prior to the purchase and installation of the roofing materials at the JSRH Project, CertainTeed represented to Chamberlin that the CertainTeed Roof System incorporating Cer-

tainTeed Flintboard polyisocyanurate insulation applied in Dow Insta-Stick adhesive, Securock gypsum fiberboard coverboard applied in Dow Insta-Stick adhesive, CertainTeed Ulta Poly SMS torch applied base ply and CertainTeed Flintlastic FR Cap 30T Cool Star cap sheet, torch applied, would meet the roof cladding design pressures required for the JSRH Project.

49.    Prior to the purchase and installation of the roofing materials at the JSRH Project, CertainTeed represented to Chamberlin that the roof system had been tested for wind uplift resistance in accordance with FM Standard 4470, Appendix D, to passing pressure of 465 psf and stated that the Class 465 classification exceeded two (2) times the field (Zone 1) and perimeter (Zone 2) design pressure requirements for the JSRH Project. CertainTeed identified one variance between the test roof assembly and the roof proposed for the Project: the base ply in the tested assembly was Flintlastic Base 20T where the base ply in the proposed assembly was Ultra Poly SMS.

50.    Prior to the sale of the roofing materials for installation at the JSRH Project, CertainTeed was aware that the Project specifications stated that the Owner reserved the right to perform wind uplift testing of the installed roof per FM 1-52 and/or ASTM E 907.

51.    Each of the forgoing representations were part of the basis of the bargain sought by Chamberlin and Chamberlin relied upon the representations and statements made by CertainTeed in deciding to utilize the CertainTeed Roof System at the Project and purchase the roofing products and materials from ABC Supply and CertainTeed that were installed by Chamberlin at the JSRH Project, including the Securock gypsum cover board and Flintboard isocyanurate insulation.

52. In deciding to utilize and install the CertainTeed Roofing System at JSRH Project, Chamberlin relied upon the skill, experience, expertise, knowledge and judgment of CertainTeed to furnish a roofing system that was suitable for use as a roofing system capable of meeting the specifications, the required wind uplift pressures and passing the uplift tests applicable to the JSRH Project.

53. CertainTeed breached its express warranty that the CertainTeed Roofing System incorporating CertainTeed Flintboard isocyanurate insulation applied in Dow Insta-Stick adhesive, Securock gypsum fiberboard coverboard applied in Dow Insta-Stick adhesive, CertainTeed Ulta Poly SMS base ply torch applied and CertainTeed Flintlastic FR Cap 30T Cool Star cap sheet torch applied would meet the roof cladding design pressures required for the JSRH Project because the materials/goods failed to comply with such project requirements and the representations of CertainTeed.

54. CertainTeed breached its express warranty that the CertainTeed Roofing System incorporating CertainTeed Flintboard isocyanurate insulation applied in Dow Insta-Stick adhesive, Securock gypsum fiberboard coverboard applied in Dow Insta-Stick adhesive, CertainTeed Ulta Poly SMS base ply torch applied and CertainTeed Flintlastic FR Cap 30T Cool Star cap sheet torch applied would have a wind uplift resistance in accordance with FM Standard 4470 to a passing pressure of 465 psf and that the Class 465 classification exceeded two times the Zone 1 and Zone 2 design pressure requirements for the JSRH Project because the materials/goods failed to comply with such project requirements, warranties and representations of CertainTeed.

55. As a direct and proximate result of CertainTeed's breach of express warranties, Chamberlin suffered damages in excess of $259,622.85.

56.     Prior to the filing of this action, CertainTeed was requested to pay the costs to remedy the roof and has not done so.

57.     Chamberlin may recover from CertainTeed its reasonable attorney's fees in prosecuting this claim for breach of express warranties against CertainTeed, in addition to the amount of its claim or costs.

58.     All conditions precedent to this action have either occurred, have been performed or have been waived or excused.

WHEREFORE, as a result of breach of the express warranties made by CertainTeed, Chamberlin demands judgment against CertainTeed for damages, prejudgment interest, attorney's fees, costs and such other and further relief as this Court deems just and equitable.

**COUNT II**
**BREACH OF EXPRESS WARRANTIES – USG**

59.     Chamberlin hereby realleges and incorporates by reference Paragraphs 1 through 58 as though fully set forth herein.

60.     The Securock cover board is a gypsum-fiber roof board that is marketed, intended and sold for use in low-slope roofing systems such as the CertainTeed Roof System installed at the JSRH Project.

61.     USG published literature, provided information on its web site, and made representations regarding the qualities, properties and suitability of Securock roof boards manufactured by USG.

62.     The USG Securock gypsum-based roof cover boards included in the CertainTeed Roofing System and installed by Chamberlin at the JSRH Project were manufactured, marketed and sold by USG.

63.     The Securock cover boards were sold by USG through ABC Supply, an authorized distributor of USG.

64.     USG represented that its Securock gypsum-fiber roof board:

(a)     was a high-performance roof board for use in low-slope commercial roofing systems;

(b)     had a unique, fiber-reinforced, homogenous composition that gave the panel strength and water resistance through to the core;

(c)     had exceptional bond and low absorption in adhered roof systems;

(d)     with its homogenous composition achieved high wind-uplift ratings;

(e)     had excellent wind-uplift performance;

(f)     achieved high wind uplift ratings;

(g)     was moisture and mold resistant;

(h)     was engineered to provide superior wind-uplift performance for a wide variety of roof assemblies;

(i)     combined superior performance with sustainable design for all types of roofing systems including built-up and modified bitumen roofing;

(j)     had uniform composition providing enhanced bond strength of membrane systems;

(k)     was FM approved and complied with the requirements of FM 4450 and FM 4470 and met FM Class 1 requirements; and

(l)     was suitable for use as an overlayment for polyisocyanurate insulation.

65.     The Securock cover board was installed at the JSRH Project on top of polyisocyanurate roof insulation and below the modified asphalt bitumen roof membrane.

66.     Installation of Securock cover board on top of polyisocyanurate roof insulation and below a modified asphalt bitumen roof membrane is a normal usage of the Securock cover board

and is consistent with USG's literature and published information pertaining to the use of Secu-

rock cover board.

67.     In deciding to install Securock boards at the JSRH Project, each of the forgoing

representations were part of the basis of the bargain sought by Chamberlin. Chamberlin relied

upon the representations of USG and the skill, experience, expertise, knowledge and judgment of

USG to manufacture and furnish Securock roof boards that were suitable for use as a cover board

to be installed over polyisocyanurate insulation in the roof system installed at the JSRH Project.

68.     USG breached express warranties by furnishing Securock roof boards that did

not meet the above-stated express warranties and representations because the materials/goods

failed to comply with such project requirements, warranties and representations of USG.

69.     As a direct and proximate result of USG's breach of express warranties, Chamber-

lin suffered damages in excess of $259,622.85.

70.     Chamberlin may recover its reasonable attorney's fees from USG in prosecuting

this claim for breach of express warranties against USG, in addition to the amount of its claim or

costs.

71.     All conditions precedent to this action have either occurred, have been performed

or have been waived or excused.

WHEREFORE, as a result of breach of the express warranties made by USG, Chamberlin

demands judgment against USG for damages, prejudgment interest, attorney's fees, costs and

such other and further relief as this court deems just and equitable.

## COUNT III
## BREACH OF IMPLIED WARRANTIES OF FITNESS AND
## MERCHANTABILITY – ALL DEFENDANTS

72.     Chamberlin hereby realleges and incorporates by reference Paragraphs 1 through 71 as though fully set forth herein.

73.     ABC Supply, as a distributor and seller of roofing materials, including Securock roof cover boards and Flintlastic and other isocyanurate insulation boards, is a merchant with respect to goods of that kind.

74.     CertainTeed, a manufacturer and seller of roofing materials including isocyanurate insulation and modified bitumen sheets, is a merchant with respect to goods of that kind.

75.     USG, as a manufacturer and seller of roofing materials, including Securock roof cover boards, is a merchant with respect to goods of that kind.

76.     Chamberlin through Canalco purchased from ABC Supply as a distributor of USG and CertainTeed roofing materials, Securock roof boards manufactured by USG and isocyanurate insulation boards from CertainTeed for use as part of the CertainTeed Roof System at the JSRH Project.

77.     The Securock roof boards were manufactured by USG and sold through ABC Supply, USG's authorized distributor, for installation in a roofing assembly.

78.     The isocyanurate insulation boards marketed by CetainTeed as FlintBoard ISO were sold through ABC Supply, CertainTeed's distributor.

79.     Pursuant to Section 2.314 of the Texas Business and Commerce Code, there arose in connection with the sale of the Securock roof boards and CertainTeed isocyanurate insulation boards implied warranties that the Securock roof boards and CertainTeed isocyanurate insulation boards would:

(a)    be fit for the ordinary purpose for which said materials are used;

(b)    pass without objection in the trade under the contract description;

(c)    be of fair average quality within the contract description; and

(d)    run, within the variations permitted by the agreement, of even kind, quality and quantity.

80.    As a result of the sale of the Securock roof boards and CertainTeed isocyanurate insulation boards and consistent with course of dealing and custom and usage in the trade, there were implied warranties that those roofing materials:

(a)    would be merchantable;

(b)    would be fit for the ordinary purpose for which such boards are used;

(c)    would perform satisfactorily in a roof assembly;

(d)    would serve as suitable roofing materials;

(e)    would be fit to serve as a cover board over polyisocyanurate insulation in a roof assembly;

(f)    would be fit to serve as insulation material that would be subject to wind loads;

(g)    would be suitable to serve as underlayment under a modified asphalt roof assembly;

(h)    would not delaminate when subject to uplift testing;

(i)    would be manufactured in such a manner that the facer of isocyanurate insulation would be well adhered to the core of the board;

(j)    would be manufactured in such a manner that the facer of isocyanurate insulation would not delaminate when subject to uplift pressure;

(k)    would be manufactured in such a way that the Securock board would not delaminate or experience cohesive failure when subject to uplift pressure;

(l)    would be suitable for their ordinary purpose;

(m)    would satisfy the JSRH Project specifications;

(n)    would pass wind uplift tests;

(o)    would be manufactured in conformance with the requirements of building codes so that a roof assembly using Securock boards and CertainTeed iso-cyanurate insulation boards would be code compliant;

(p)    were suitable for a roofing contractor to install on buildings such as the JSRH Project;

(q)    would satisfy the Owner's, Hensel Phelps's and Chamberlin's needs with respect to the JSRH Project; and

(r)    could be used on a high-rise building.

81.    ABC Supply, CertainTeed, and USG breached the above-stated implied warranties. Securock roof boards and isocyanurate insulation boards used at the JSRH Project:

(a)    did not pass without objection in the trade under the contract description;

(b)    were not of fair average quality within the contract description;

(c)    were not fit for the ordinary purpose for which said materials are used;

(d)    did not run, within the variations permitted by the agreement, of even kind, quality and quantity;

(e)    were not merchantable;

(f)    did not serve as suitable roofing materials at the JSRH Project;

(g)    delaminated when subject to uplift testing;

(h)    were not manufactured in such a manner that facers of isocyanurate insulation boards were well adhered to the core of the board;

(i)    did not perform satisfactorily;

(j)    did not maintain their integrity when subject to uplift pressure;

(k)    did not resist uplift pressures to which the JSRH roof was subject;

(l) did not pass wind uplift tests to which the JSRH roof was tested;

(m) were not manufactured in conformance with the requirements of the applicable building codes so that a roof assembly using Securock brand boards would be code compliant;

(n) were not suitable to be installed on buildings such as the JSRH Project;

(o) did not satisfy the Owner's, Hensel Phelp's and Chamberlin's needs with regard to the JSRH Project; and

(p) could not be used satisfactorily on a high rise building located in Galveston, Texas.

82. Following the failure of the roof at the JSRH Project to pass uplift tests, ABC Supply, CertainTeed, and USG were notified of the failure to pass uplift tests and the problems with the roofing materials used at the JSRH project.

83. As a direct and proximate result of ABC Supply's, CertainTeed's and USG's breach of the implied warranty of merchantability, Chamberlin suffered damages in excess of $259,622.85.

84. Chamberlin may recover its reasonable attorney's fees from all defendants in prosecuting this claim for breach of implied warranties of fitness and merchantability, in addition to the amount of its claim or costs.

85. All conditions precedent to this action have either occurred, have been performed or have been waived or excused.

WHEREFORE, as a result of breach of the implied warranty of merchantability by ABC Supply, CertainTeed and USG, Chamberlin demands judgment against ABC Supply, CertainTeed and USG for damages, prejudgment interest, attorney's fees, costs and such other and further relief as this court deems just and equitable.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PUR-
## POSE – ALL DEFENDANTS

86.     Chamberlin hereby realleges and incorporates by reference Paragraphs 1 through 85 as though fully set forth herein.

87.     At the time of the sale of the roofing materials, ABC Supply, CertainTeed and USG knew or had reason to know the purpose for which the materials were supplied and that Chamberlin was relying on ABC Supply, CertainTeed and USG to furnish goods suitable to serve in the roof assembly to be installed by Chamberlin at the JSRH Project.

88.     ABC Supply, CertainTeed and USG had knowledge or reason to know that Chamberlin was engaged in the business of commercial roofing and that the goods supplied were for use in Chamberlin's roofing business to be installed by Chamberlin as a component of a roof assembly.

89.     ABC Supply, CertainTeed, and USG knew that the roofing materials were going to be used by Chamberlin in the installation of the roof at JSRH Project.

90.     In purchasing the roof materials, Chamberlin relied upon the skill, experience, expertise, knowledge and judgment of ABC Supply, CertainTeed, and USG to furnish materials suitable for Chamberlin's intended purpose.

91.     Chamberlin installed the roofing materials for their intended purpose at the JSRH Project.

92.     After the roofing materials were installed at the JSRH Project, Chamberlin learned that they were unsuitable for their intended purpose.

93.     Pursuant to Section 2.315 of the Texas Business and Commerce Code, there arose in connection with the sale of the roofing materials an implied warranty that the roofing ma-

terials would be fit for the particular purpose of serving as components of the roof in the assembly to be installed at the JSRH Project.

94.     ABC Supply, CertainTeed, and USG breached the implied warranty of fitness for a particular purpose. Securock roof boards and CertainTeed isocyanurate insulation boards supplied to Chamberlin for installation at the JSRH Project were not fit to serve as roofing materials at the JSRH Project because the Securock roof boards did not have adequate cohesive strength, the facer was not adequately attached to the polyisocyanurate core and these materials did not have adequate wind uplift resistance.

95.     CertainTeed, ABC Supply, and USG were notified of the failure of roof at the JSRH Project to pass uplift tests and the costs incurred by Chamberlin to remedy the problem. CertainTeed, ABC Supply and USG have not compensated Chamberlin for the costs incurred by Chamberlin.

96.     As a direct and proximate result of ABC Supply's, CertainTeed's, and USG's breach of the implied warranty of fitness for a particular purpose, Chamberlin suffered damages in excess of $259,622.85.

97.     Chamberlin may recover from the defendants its reasonable attorney's fees in prosecuting this claim for breach of warranty, in addition to the amount of its claim or costs.

98.     All conditions precedent to this action have either occurred, have been performed or have been waived or excused.

WHEREFORE, as a result of breach of the implied warranty of fitness for particular a purpose by ABC Supply, CertainTeed, and USG, Chamberlin demands judgment against ABC Supply, CertainTeed, and USG for damages, prejudgment interest, attorney's fees, costs and such other and further relief as this court deems just and equitable.

## COUNT V
## BREACH OF CONTRACT – ABC SUPPLY

99.     Chamberlin hereby realleges and incorporates by reference Paragraphs 1 through 98 as though fully set forth herein.

100.    Chamberlin engaged Canalco to supply roofing materials, including Securock roof boards and isocyanurate insulation boards to be used in the construction of the roof system at the JSRH Project.

101.    Thereafter, Canalco contracted with ABC Supply to supply said roofing materials, including Securock roof boards and isocyanurate insulation boards to be used in the construction of the roof system at the JSRH Project.

102.    Prior to ABC Supply's selling the roofing materials, ABC Supply was aware Chamberlin would be installing the roofing materials at the JSRH Project.

103.    Prior to ABC Supply's selling the roofing materials, ABC Supply was aware of the specifications pertaining to the roofing materials to be installed by Chamberlin at the JSRH Project and that the roofing materials would be installed at the JSRH Project.

104.    Prior to ABC Supply's selling the roofing materials, ABC Supply had access to the JSRH Project specifications pertaining to the roofing materials.

105.    Prior to ABC Supply's selling the roofing materials, ABC Supply was aware of the requirements pertaining to the roof assembly to be installed at the JSRH Project.

106.    ABC Supply breached its contract by supplying roofing materials that proved to be defective.

107.    Securock cover boards sold by ABC Supply experienced cohesive failure at the JSRH Project when subjected to wind uplift testing.

108.     Isocyanurate insulation boards sold by ABC Supply experienced facer delamination at the JSRH Project when subjected to wind uplift testing.

109.     Prior to the filing of this suit, Chamberlin notified ABC Supply of the failure of the CertainTeed Roof System to pass uplift tests, the deficiencies in the materials sold by ABC Supply for installation by Chamberlin at the JSRH Project, and the costs incurred by Chamberlin due to the materials sold by ABC Supply.

110.     ABC Supply has failed to accept responsibility and compensate Chamberlin for the damages incurred by Chamberlin caused by the materials sold by ABC Supply.

111.     As a direct and proximate result of ABC Supply's breach of contract, Chamberlin suffered damages in excess of $259,622.85.

112.     All conditions precedent to this action have either occurred, have been performed or have been waived or excused.

113.     Under Texas Civil Practices and Remedies Code chapter 38, Chamberlin may recover its reasonable and necessary attorney's fees in prosecuting this claim for breach of contract against ABC Supply, in addition to the amount of its claim or costs.

WHEREFORE, as a result of ABC Supply's breach of contract with Canalco and as a consequence of the aforementioned Assignment, Chamberlin demands judgment against ABC Supply for damages, prejudgment interest, attorney's fees, costs and such other and further relief as this court deems just and equitable.

## COUNT VI
## NEGLIGENCE IN DESIGN, MANUFACTURING & TESTING – USG

114.     Chamberlin hereby realleges and incorporates by reference Paragraphs 1 through 113 as though fully set forth herein.

115.     USG designed, manufactured, distributed and sold the Securock roof boards that were installed by Chamberlin at the JSRH Project.

116.     USG had a duty to properly design, manufacture and test the Securock roof boards.

117.     USG acted negligently and breached its duty to properly design, manufacture and test Securock roof boards by:

      (a)     selling defective Securock roof boards that were negligently manufactured;

      (b)     manufacturing and selling Securock roof boards with latent defects that were unknown to Chamberlin;

      (c)     manufacturing and selling Securock roof boards with inadequate cohesive strength;

      (d)     failing to test Securock roof boards for cohesive strength;

      (e)     failing to properly test and inspect the Securock roof boards prior to selling them or performing those tests and inspections negligently;

      (f)     failing to determine the uplift pressure that Securock roof boards could withstand without delaminating or losing board integrity; and

      (g)     failing to provide any warnings regarding the roof adequacy of Securock roof boards when subject to uplift testing.

118.     The cohesive failure of the Securock roof boards was due to the inability of the Securock roof boards to remain intact when subject to wind uplift testing at the JSRH Project.

119.     If USG had properly and adequately manufactured and tested the Securock roof boards prior to selling them, USG would have known that the Securock roof boards sold for the JSRH Project did not have sufficient cohesive strength to serve as a component of a roof assembly at the JSRH Project or other high wind zone areas.

120.     If USG had properly designed, manufactured and tested the Securock roof boards prior to selling them, the cohesive failure at the JSRH Project would not have occurred.

121.     USG did not provide any warning that its Securock roof boards were not suitable to be used as a component of a roof assembly in a high wind zone area.

122.     As a direct and proximate result of USG's negligence, Chamberlin suffered damages in excess of $259,622.85.

123.     All conditions precedent to this action have either occurred, have been performed or have been waived or excused by USG.

WHEREFORE, as a direct result of the negligence of USG, Chamberlin demands judgment against USG for damages, prejudgment interest, costs, attorney's fees and such other and further relief as this court deems just and equitable.

## COUNT VII
## NEGLIGENCE - CERTAINTEED

124.     Chamberlin hereby realleges and incorporates by reference Paragraphs 1 through 123 as though fully set forth herein.

125.     CertainTeed negligently misrepresented that the CertainTeed Roofing System, which included Securock cover roof board and polyisocyanurate roof installation:

(a)     would satisfy the specification requirements for the JSRH Project;

(b)     was suitable to be installed at the JSRH Project;

(c)     would meet the design pressure requirements for the JSRH Project; and

(d)     would meet wind uplift resistance in accordance with FM Standard 4470 to a passing pressure of 465 psf, exceeding two times the Zone 1 and Zone 2 design pressure requirements for the JSRH Project; and

126.    CertainTeed made these material misrepresentations in the course of its business and to induce transactions in which it had a pecuniary interest.

127.    CertainTeed supplied this false information with the intent that a roofing contractor such as Chamberlin would rely on these representations.

128.    CertainTeed failed to exercise reasonable care in representing to Chamberlin that the CertainTeed Roof System with Securock gypsum cover board and isocyanurate insulation would meet the wind uplift testing requirements applicable to the JSRH Project.

129.    At the time CertainTeed made the misrepresentations to Chamberlin, CertainTeed either knew or should have known that components would not perform as represented or made this representation without knowledge of its truth or falsity.

130.    Chamberlin reasonably and justifiably relied on CertainTeed's representations in using and installing the CertainTeed Roofing System, including Securock cover boards and Flintboard isocyanurate insulation at the JSRH Project roof system.

131.    CertainTeed negligently failed to conduct its own tests to determine if a roof assembly using Securock gypsum cover boards would withstand the wind uplift pressures required for the JSRH Project.

132.    CertainTeed negligently failed to evaluate or test the adhesion of the facer to the Flintboard polyisocyanurate insulation core.

133.   As a direct and proximate result of CertainTeed's negligence, Chamberlin suffered damages as stated herein.

134.   All conditions precedent to this action have either occurred, have been performed or have been waived or excused.

WHEREFORE, as a direct result of CertainTeed's negligence, Chamberlin demands judgment against CertainTeed for damages, prejudgment interest, costs, attorney's fees and such other and further relief as this court deems just and equitable.

## COUNT VIII
## NEGLIGENT MISREPRESENTATION - USG

135.   Chamberlin hereby realleges and incorporates by reference Paragraphs 1 through 134 as though fully set forth herein.

136.   USG represented that its Securock gypsum-fiber roof board:

(a)   was a high-performance roof board for use in low-slope commercial roofing systems;

(b)   had exceptional bond and low absorption in adhered roof systems;

(c)    had excellent wind-uplift performance;

(d)   achieved high wind uplift ratings;

(e)   was engineered to provide superior wind-uplift performance for a wide variety of roof assemblies;

(f)   combined superior performance with sustainable design for all types of roofing systems including built-up and modified bitumen roofing;

(g)   had uniform composition providing enhanced bond strength of membrane systems;

(h)   can be used as a component in built-up and modified bitumen roof assemblies;

(i)     was FM approved and complied with the requirements of FM 4450 and FM 4470 and met FM Class 1 requirements; and

(j)     was suitable for use as an overlayment for polyisocyanurate insulation.

137.    USG made the aforementioned representations in the course of its business and to induce transactions in which it had a pecuniary interest.

138.    USG made these representations with the intent that a contractor such as Chamberlin would rely on them.

139.    At the time USG made these representations, USG either knew or should have known that the Securock roof boards would not perform as represented or made the representations without knowledge of their truth or falsity.

140.    USG failed to exercise reasonable care or competence in making said representations.

141.    Chamberlin reasonably and justifiably relied on USG's representations in purchasing and installing the Securock roof boards at the JSRH Project.

142.    As a direct and proximate result of USG's negligence, Chamberlin suffered damages as stated herein.

143.    All conditions precedent to this action have either occurred, have been performed or have been waived or excused by USG.

WHEREFORE, as a direct result of negligent misrepresentation by USG, Chamberlin demands judgment against USG for damages, prejudgment interest, costs, attorney's fees and such other and further relief as this court deems just and equitable.

## CONDITIONS PRECEDENT

144. All conditions precedent to plaintiff's claim for relief have been performed or have occurred.

## DEMAND FOR JURY TRIAL

145. Chamberlin hereby requests a trial by jury on all claims so triable.

## REQUEST FOR RELIEF

WHEREFORE, Chamberlin Houston, LLC prays as follows:

(a)     That the Court enter judgment against CertainTeed on Count I for any and all sums as the Court may find due for CertainTeed's breach of express warranties;

(b)     That the Court enter judgment against USG on Count II for any and all sums as the Court may find due for USG's breach of express warranties;

(c)     That the Court enter judgment against ABC Supply, USG, and CertainTeed on Count III for any and all sums as the Court may find due for ABC Supply's, USG's, and CertainTeed's breach of implied warranties of merchantability and fitness for ordinary purpose;

(d)     That the Court enter judgment against ABC Supply, USG, and CertainTeed on Count VIII for any and all sums as the Court may find due for ABC Supply's, USG's, and CertainTeed's breach of implied warranty of fitness for particular purpose;

(e)     That the Court enter judgment against ABC Supply on Count V for breach of contract;

(f)     That the Court enter judgment against USG on Count VI for any and all sums due Chamberlin for USG's negligent design, manufacture and testing;

(g)     That the Court enter judgment against CertainTeed on Count VII for any and all sums due Chamberlin for CertainTeed's negligence;

(h)     That the Court enter judgment against USG on Count VIII for any and all sums due Chamberlin for USG's negligent representations;

(i)     That the Court enter judgment against CertainTeed, USG and ABC Supply for Chamberlin's reasonable attorney's fees on Counts I, II, III, IV and V;

(j)     That the Court award all other and further relief, including, but not limited to, attorneys' fees, costs, expenses, and interest as permitted by law; and

(k)     That Chamberlin have such other and further legal and equitable relief as this Court may deem just and proper.

Respectfully submitted,

MILLS SHIRLEY L.L.P.
2228 Mechanic St., Suite 400
Galveston, TX 77550
Phone:       409.761.4001
Fax:          866.674.7808

By:*/s/ Robert E. Booth*
    Robert E. Booth, Attorney-in-Charge
Texas Bar No. 24040546
SDTX No.36858
rbooth@millsshirley.com

HENDRICK, PHILLIPS, SALZMAN &
SIEGEL, P.C.
230 Peachtree Street, N.W.
Suite 2500
Atlanta, Georgia 30303
Phone:       404.522.1410
Fax:          404.522.9545

By: *ined/s/ Stephen M. Phillips*
    Stephen M. Phillips, *admitted pro hac vice*
Georgia Bar No. 576850
smp@hpsslaw.com

ATTORNEYS FOR
CHAMBERLIN HOUSTON, LLC

## CERTIFICATE OF SERVICE

I certify that service on known Filing Users will be automatically accomplished through the Notice of Electronic Filing on July 13, 2017.

*/s/ Robert E. Booth*
Robert E. Booth